JUAN ORTIZ-PERICCHI, Appellant, *v.* REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 717. Submitted April 9, 1928.—Decided June 15, 1928.

*Nazario & García Méndez* for the appellant.   The registrar appeared by brief.

Mr. Justice Hutchison delivered the opinion of the court.

A registrar of property refused to record an instrument purporting to be an extension of a pre-existing mortgage upon the theory that the new agreement was in fact a novation of the original contract.

Articles 144 of the Mortgage Law and 181 of the Regulations read as follows:

"Art. 144.—Any act or agreement between the parties tending to modify or destroy the force of a prior mortgage obligation, such as a payment, set-off, respite, an agreement or promise not to demand, novation of the original contract, a compromise or settlement, shall not produce any effect against a third person unless it be made a matter of record in the registry by means of a new entry, a total or partial cancellation, or a marginal note, as the case may be."

"Art. 181.—In accordance with the provisions of article 144 of the law, when the act or agreement between the parties produces a total or partial novation of the contract recorded, a new record shall be made and the previous record canceled.   When it gives rise to the annulment and rescission of the contract, in whole or in part, a total or partial cancellation shall be entered; and when the purpose thereof is to carry out a recorded contract subject to suspensive conditions, or to make the payment of a part of the mortgage debt a matter of record, a marginal note shall be entered."

The parties to the instrument now before us are the original mortgagor, who is joined by his wife, and the original

mortgagee. The mortgagor states that he is the owner of four small rural properties, A, B, C and D, describing them with the usual indications as to source and character of title; that by a certain instrument executed before the notary Miguel A. García Méndez, on a specified date, of record in the registry of property of San Germán, at page 106 of volume 69 of that municipality, the said mortgagor, in order to secure the payment of a loan of two thousand dollars, together with interest thereon, executed in favor of the party of the second part as said original mortgagee, a voluntary mortgage upon a rural property of sixty-three and three-fourths *cuerdas,* situated in the ward of Hoconuco Alto, San Germán; that the said loan of two thousand dollars was to be consummated upon a condition, not stated in the original mortgage, to the effect that the instrument last mentioned should be placed upon record as a second mortgage; that the mortgage No. 215, previously executed before the notary and upon the date above mentioned, was based upon the assurance given by the mortgagor that the property in question was subject only to a previous encumbrance in favor of the Federal Agricultural Loan Bank; that upon presenting the supposed second mortgage for record in the registry of property, it turned out to be in fact not a second but a third mortgage, by reason of the previous record of another encumbrance in addition to the lien of the Federal Bank; and that, in order to provide good and sufficient security for the loan of two thousand dollars first above mentioned, the said mortgagor had agreed to extend the mortgage executed before the notary Miguel A. García Méndez on December 26, 1927, "and hereby does extend the said mortgage to include the properties described in this instrument, which shall continue subject to such lien until the obligation shall have been totally extinguished in accordance with the provisions of the said instrument."

The new agreement also contains the following clauses:

"Eighth: It is the wish of Ramón Ramos López that this extension of the mortgage to the properties described in this deed shall be subject to each and all of the conditions stipulated in the original mortgage.

"Ninth: In addition to the conditions established in the mortgage deed, which are applicable to the present deed, it is agreed also between the parties that if after paying one or more of the instalments the mortgagor should desire that said instalment or instalments be applied to the responsibility of one or more of the encumbered properties, he may do so if in the opinion of the mortgagee the capital, interest and additional credits for which the remaining properties are liable are well and sufficiently guaranteed according to the distribution of the liability to be made hereafter.

"Tenth: For the purposes of the Mortgage Law the parties hereto now mutually agree to distribute the mortgage liability among the encumbered properties in the following manner: The property described in the mortgage deed as composed of 63.05 acres shall answer for $900 of the capital and for the other amounts representing the legal interest, interest due, costs and attorney's fees in case of suit; the property described in this deed under letter A shall answer for $200 of the capital; property described under letter B for $400 of the capital; property C for $200 of the capital, and property marked letter D for $300 of the capital."

Sections 1171 and 1172 of article 6, sub-title Novation, chapter 17 entitled Extinctions of Obligations, Book Four, Title 1, of the Civil Code, read thus:

"Sections 1171. Obligations may be modified—

"1. By the change of their object or principal conditions.

"2. By substituting the person of the debtor.

"3. By subrogating a third person in the rights of the creditor.

"Section 1172. In order that an obligation may be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points."

Articles 144 of the Mortgage Law and 181 of the Regulations, relied upon by the registrar, must be construed together, and in the light of the spirit and purpose of the Mortgage Law and of the Regulations. That spirit and purpose are plainly indicated by the provision in article 144 to

the effect that acts and agreements of the sort therein enumerated "shall not produce any effect against a third person," unless made a matter of record.

*Ortiz* v. *The Registrar,* 16 P.R.R. 684, is not in point. The record in that case does not contain a copy of the instrument therein discussed. The briefs make it perfectly clear that there was no question of novation *vel non.* This is also reasonably apparent from the English text of the opinion. Whatever doubt there might be must arise out of the use of the word *"ampliación,"* in the Spanish translation, as an equivalent to the word "increase" employed in the English original.

Counsel for appellant in the case at bar assure us that in the case last above cited there was a new loan made after the former mortgage had been recorded, and that the novation in question was an attempt to include the amount of such new loan as a part of the principal of the pre-existing mortgage, to be secured by the pre-existing lien upon the real estate already mortgaged, without any pretense of an increase in the security already provided for such original indebtedness. This statement is entirely consistent with the briefs in the earlier case, and with the opinion of this court as published in 16 P.R.R. 684, where it is said that—

"The deed purported to be an increase and novation of a mortgage executed on the 27th day of July, 1907."

To hold that a mortgagor may increase at will the amount of a first mortgage already recorded, without providing additional security for such increase, and without regard to the rights of junior encumbrancers, who may have recorded subsequent liens, would be manifestly contrary both to the letter and to the spirit of the Mortgage Law and of the Regulations. Incidentally, the practice of lending money upon second or subsequent mortgages as security for the loan would soon become obsolete. But neither the ruling appealed from in the instant case nor the brief of the registrar in

support thereof offers any explanation or suggestion as to any conceivable manner in which a decrease in the amount secured by a recorded mortgage or other lien upon a given parcel of real estate could operate to the prejudice of subsequent lien holders, or other third persons for the protection of whom the Mortgage Law was enacted and for the benefit of whom the registries of properties were established.

The instrument now under consideration is not a novation of the original contract because there is no change of object or principal conditions, no substitution as to the person of the debtor, and no subrogation of a third person in the rights of the creditor. Much less is there any evidence of an intention to extinguish the original obligation by the substitution of a new one, or any very apparent incompatibility ''in all points.''

In the instant case there was no modification whatever of the original agreement, beyond the giving of additional security, and a redistribution of liability in order to meet the requirements of article 119 of the Mortgage Law. The amount of indebtedness was neither increased nor decreased. In so far as the original entries and recorded rights of third persons are concerned, the only effect of such modification is a partial cancellation and discharge of the lien upon the property covered by the first mortgage.

If a partial payment of eleven hundred dollars had been made, instead of extending the original lien so as to include other real estate as security for that amount, thereby relieving to that extent the property first mortgaged, then there would have been no doubt whatever about the proper course to pursue. Yet, for the purposes of any necessary change in the original entry, the result is exactly the same.

In such cases the primary purpose of a new entry, or of a marginal note, as the case may be, is not to indicate the present status of the personal obligation secured by the auxiliary contract. It is to inform the world that the mortgage lien upon certain real estate has been reduced to the

extent indicated by a specified amount of money. It would be a matter of no concern to any third person dealing directly with the land, whether the amount in question was deducted from the original indebtedness or was secured by an extension of the original lien so as to cover another parcel or other parcels of real estate. As to any one negotiating with the original mortgagee, it is enough to know that the liability of the land originally mortgaged has been reduced, and that the amount of such reduction has been secured by the substitution of other property.

The result being identical (in its bearing and effect upon the original mortgage subject of the entry to be affected by the extension of the original lien and diminished responsibility of the property already encumbered) there would seem to be no satisfactory reason why that result should not be indicated, as in the case of payment, by a marginal note. But, however this may be, the modification in the case at bar amounts, at most, to a partial "annulment and rescission" of the original contract. It follows then that the entry of a partial cancellation would be both permissible and proper by the express provision of article 181 of the Regulations.

The registrar of course was quite right in refusing to record the instrument in question as constituting a lien upon two of the properties offered as additional security, neither of which is of record in the name of the mortgagor, nor in that of any other person. To this extent the ruling appealed from must be affirmed. In all other respects it will be reversed.